UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| GABRIEL F. DALMAU,<br><br>      Plaintiff,<br><br>   v.<br><br>CITY OF NEW YORK,<br><br>      Defendant. | Case No. 22-CV-6326<br><br>**COMPLAINT**<br><br>**ECF CASE** |

COMES NOW PLAINTIFF Gabriel F. Dalmau, by his undersigned attorneys, for his complaint against Defendant City of New York, and alleging as follows:

**NATURE OF THE ACTION**

1. This is an action for religious discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, on the grounds that Defendant failed to reasonably accommodate Plaintiff's sincerely held religious objection to a mandatory COVID-19 vaccination policy, wrongly denied his requested religious exemption, and as a result illegally terminated his employment. Plaintiff asserts concurrent claims under the New York State Human Rights Law, N.Y. Exec. Law § 290 *et seq.*, and the New York City Human Rights Law, N.Y.C. Admin. Code § 8-101 *et seq.* This is not an action challenging the legality of the COVID-19 vaccination policy itself, but asserts Plaintiff's individual right to a reasonable accommodation. By this action, Plaintiff seeks all legal and equitable relief available, including reinstatement, back pay, front pay, out of pocket costs, compensatory damages, and attorney's fees and costs. Plaintiff demands trial by jury.

## PARTIES

2. Plaintiff **Gabriel F. Dalmau** is an adult resident of Woodside, New York (Queens County). At all relevant times, Dalmau was an "employee" of Defendant within the meaning of Title VII and applicable state and city laws.

3. Defendant **City of New York** is a municipality of the State of New York. At all relevant times, City of New York was Plaintiff's "employer" within the meaning of Title VII and applicable state and city laws.

## JURISDICTION AND VENUE

4. This Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question) and 42 U.S.C. § 2000e-5(f)(3) (Title VII).

5. This Court has supplemental jurisdiction over Plaintiff's state and city law claims pursuant to 28 U.S.C. § 1367, because Plaintiff's federal, state, and city law claims derive from a common nucleus of operative facts and form part of the same case or controversy under Article III of the U.S. Constitution.

6. This Court has venue over this action pursuant to 28 U.S.C. §§ 1391(b)(1) and (b)(2) and 42 U.S.C. § 2000e-5(f)(3) (Title VII), because Defendant resides in this judicial district and a substantial part of the events or omissions giving rise to the claim occurred in this judicial district.

## ADMINISTRATIVE EXHAUSTION

7. Plaintiff properly exhausted his administrative remedies under Title VII prior to filing this action.

8. On or about May 10, 2022, within 180 days of the alleged discriminatory acts, Dalmau filed a charge of discrimination with the U.S. Equal

Employment Opportunity Commission (EEOC). The charge was assigned charge number 520-2022-05880.

9. On August 19, 2022, the U.S. Department of Justice (to which agency the charge had been assigned because it involved a government respondent) issued a Notice of Right to Sue, a copy of which is attached hereto as **Exhibit A**.

10. This action was filed within 90 days of Dalmau's receipt of the Notice of Right to Sue.

## ALLEGATIONS

11. Dalmau was employed by the New York City Department of Sanitation (DSNY), an agency of the City of New York, from on or about July 3, 2017, until his termination on February 22, 2022.

12. Dalmau was a full-time Metal Work Mechanic, assigned to the Central Repair Station/Q190 in Woodside, New York (Queens County). His main job duties included welding, grinding, torch cutting, and using various machinery and tools related to metal fabrication, for the repair of various city vehicles and components related to garbage collection trucks, salt spreaders, and general construction equipment.

13. At all relevant times, Dalmau was qualified for his position and performed his duties in a satisfactory manner.

14. On or about October 20, 2021, former New York City Mayor Bill de Blasio announced that all city workers were required to receive the COVID-19 vaccination, with at least the first dose by October 29, 2021. The announcement stated that "[u]nvaccinated employees will be placed on unpaid leave until they show

proof of vaccination to their supervisor." DSNY employees received an email notifying them of the vaccination mandate.

15. Dalmau is Roman Catholic.

16. In accordance with prescribed DSNY procedures, on October 26, 2021, Dalmau submitted a request for a religious exemption to the COVID-19 vaccination policy via email to "raexemptions@dsny.nyc.gov." In his email, Dalmau explained, *inter alia*, that "[r]eceiving the COVID-19 vaccinations would violate my deeply, sincerely held religious beliefs, practices and observances."

17. The DSNY acknowledged receipt of Dalmau's exemption request the next day, stated that his request was being reviewed by the Office of Equity, Diversity & Inclusion, and explained that "[i]n the event that this review goes beyond the deadline date of October 30, 2021 at 2 PM, in which all DSNY employees are required to be vaccinated, you will be permitted to continue to submit weekly negative PCR test results (and remain unvaccinated) while your accommodation request is under consideration."

18. Dalmau continued working a regular, full-time schedule while his religious exemption request was pending.

19. On October 30, 2021, Dalmau received an email from DSNY Associate Counsel Holly Biller "requesting supplemental information to assist DSNY with making a determination as to your request." Dalmau responded to the email on October 31, 2021, further explaining, *inter alia*, that: "The Bible teaches that God created human beings in his image (Genesis 1:26-27). This, for me, means that human life is sacred and God created the human body and its human immune system to function as he created it. The Bible also teaches that human life begins at conception (Psalm 139:13-16). Therefore, abortion is the taking of a human life and

is forbidden by God (Exodus 20:13) in our religion.  Any vaccine that uses fetal cell lines to produce and manufacture the vaccine I oppose.  All the current COVID-19 vaccines interfere with the function of the human immune system which God has created. . . . Therefore, this process violates God's will for humanity according to the Bible."

20. Federal regulations promulgated by the U.S. Equal Employment Opportunity Commission provide that "[i]n most cases whether or not a practice or belief is religious is not at issue."  29 C.F.R. § 1605.1.  The EEOC has further explained that "[g]enerally, under Title VII, an employer should proceed on the assumption that a request for religious accommodation is based on sincerely held religious beliefs, practices, or observances" and that "[t]he sincerity of an employee's stated religious beliefs, practices, or observances is usually not in dispute."  *See* "What You Should Know About COVID-19 and the ADA, the Rehabilitation Act, and Other EEO Laws" (updated July 12, 2022), Section L.2 (available at www.eeoc.gov).

21. On November 18, 2021, Dalmau received an email notifying him that "DSNY is denying your request for an accommodation."  The only explanation given was that "the information you provided in support of your request has not sufficiently demonstrated to DSNY that there is a basis for granting you an exemption."

22. Notably, DSNY did not state that they rejected Dalmau's sincerely held religious beliefs or that granting him an accommodation would cause an undue hardship on the agency.  Indeed, there is no indication that DSNY reviewed Dalmau's application in good faith, if at all.

23. Dalmau was given three business days in which to appeal, either to a central city panel (Option 1) or a private arbitration service (Option 2).

5

24. Dalmau submitted his appeal under Option 1 on November 23, 2021. In his appeal, Dalmau explained, *inter alia*, that: "I am a devout Roman Catholic who believes that only our Lord and Savior Jesus Christ can save me from this or any other virus. Getting the vaccine goes against all of my beliefs and morals. I was raised to believe that my life and the choices therein are in the hands of God." Dalmau further explained: "I recently had COVID-19 and through my natural, God given immune system, through prayer and faith in my Lord and Savior that He is the only protection that I need, I was able to overcome the virus. . . . I did not have to put foreign chemicals in my body in order to overcome the virus, and now my immune system will continue to protect me naturally, as God intended. . . . He is the only one that can determine how and when I die. I sincerely believe that taking a vaccine will interfere with the plan that God has already created for me." Finally, Dalmau noted that he was aware that some of his colleagues had their religious exemptions approved, "including those who belong to the same religion as I and believe and adhere to the teachings of the Roman Catholic church."

25. Dalmau continued working a regular, full-time schedule while his appeal was pending.

26. On January 14, 2022, Dalmau received an email notifying him that "the City of New York Reasonable Accommodation Appeals Panel <u>has denied your appeal for a religious exemption.</u>" No explanation was given.

27. Notably, the appeals panel did not state that they rejected Dalmau's sincerely held religious beliefs or that granting him an accommodation would cause an undue hardship on the agency. Indeed, there is no indication that the appeals panel reviewed Dalmau's application in good faith, if at all.

28. Dalmau was required to submit proof of COVID-19 vaccination no later than January 20, 2022, otherwise he would be placed on leave without pay status "until you provide proof of COVID-19 vaccination."

29. Because Dalmau will not violate his sincerely held religious beliefs, he did not, and will not, receive the COVID-19 vaccination.

30. On February 22, 2022, Dalmau received a letter from the DSNY terminating his employment because he did not get the COVID-19 vaccination.

31. DSNY never questioned or denied the sincerity of Dalmau's religious objections to the COVID-19 vaccine.

32. DSNY never conducted an individualized review of Dalmau's job site or job duties to determine if his religious objections to the COVID-19 vaccine could be reasonably accommodated.

33. DSNY never stated that it would cause an undue hardship on the conduct of DSNY's business to grant Dalmau the religious exemption.

34. Since approximately the summer or fall of 2020, prior to the COVID-19 vaccination mandate, Dalmau followed established health and safety protocols, including wearing a mask at work, following general hygiene practices (e.g., using hand sanitizer), and social distancing from others (besides his work partner). Furthermore, beginning in September 2021, unvaccinated employees were required to undergo weekly testing, which he did (always negative). All of these precautions were deemed adequate to mitigate the risk of catching or transmitting COVID-19.

35. It would not have caused an undue hardship to allow Dalmau to continue to follow these or similar precautions in lieu of the COVID-19 vaccine.

36. The EEOC has published extensive guidance relating to COVID-19. In "What You Should Know About COVID-19 and the ADA, the Rehabilitation Act,

and Other EEO Laws" (updated July 12, 2022) (available at www.eeoc.gov), the EEOC has explained:

> An employee who does not get vaccinated due to a disability (covered by the ADA) or a sincerely held religious belief, practice, or observance (covered by Title VII) may be entitled to a reasonable accommodation that does not pose an undue hardship on the operation of the employer's business. For example, as a reasonable accommodation, an unvaccinated employee entering the workplace might wear a face mask, work at a social distance from coworkers or non-employees, work a modified shift, get periodic tests for COVID-19, be given the opportunity to telework, or finally, accept a reassignment.

*Id.* § K.2 (Vaccinations – Overview); *see also id.* § L.3 ("In many circumstances, it may be possible to accommodate those seeking reasonable accommodations for religious beliefs, practices, or observances without imposing an undue hardship."). These are precisely the reasonable accommodations at issue here – testing, masking, and sanitizing – that Dalmau could have followed in lieu of the COVID-19 vaccine.

37. It would not have caused an undue risk to other employees of catching COVID-19 to allow Dalmau to continue following the same health and safety protocols that were in place before DSNY announced its mandatory vaccination policy.

38. Nothing changed about the dangers of COVID-19 in the Fall 2021 to render these precautions ineffective. On the contrary, rates of hospitalizations and deaths under the "Delta" variant were declining by October 2021, and the "Omicron" variant, which became dominant in December 2021, is widely acknowledged to be *less virulent* than previous waves have been.

39. Significantly, it was well-established by the Fall 2021 that the available COVID-19 vaccines *do not prevent the transmission of the virus*.

40. On August 5, 2021, during a televised interview with CNN's Wolf Blitzer, CDC Director Dr. Rochelle Walensky stated that the COVID-19 vaccines

"continue to work well for Delta, with regard to severe illness and death – they prevent it. But what they can't do anymore is prevent transmission."

41. This was confirmed recently by Dr. Deborah Birx, former White House Coronavirus Response Coordinator, who told Fox News on July 22, 2022, that she "knew these vaccines were not going to protect against infection. . . ."

42. Even Dr. Anthony Fauci has admitted, during an interview with Fox News on July 12, 2022, that the "vaccines – because of the high degree of transmissibility of this virus – don't protect overly well, as it were, against infection . . . ."

43. Upon information and belief, Defendant has no scientific studies, data, or other objective evidence demonstrating that an employee who follows the same health and safety protocols that were in place before Defendant announced its mandatory vaccination policy, but who is not vaccinated, poses an increased risk of spreading COVID-19 to other employees. This is pure speculation.

44. Indeed, it is possible that unvaccinated employees who are regularly tested for COVID-19 will be more likely to know they are infected and potentially contagious – and therefore can quarantine and be less likely to transmit the virus unknowingly – than vaccinated employees who do not undergo regular testing.

45. In short, there is no objective, scientific basis for Defendant to argue that granting Dalmau a religious exemption to the COVID-19 vaccination policy would have posed an undue risk to other employees of becoming sick from COVID-19. This is pure speculation.

46. To the best of his knowledge, Dalmau is aware of other DSNY employees whose requests for religious exemptions were granted – including his work partner, whom he worked alongside for the previous 2.5 years (including

9

throughout the pandemic). The work partner has the same title, performs the same job duties, and works in the same locations as Dalmau. If granting his religious exemption did not cause an undue hardship, it would not have caused an undue hardship to grant Dalmau's exemption.

47. Since his termination, Dalmau has diligently pursued alternative employment, so far unsuccessfully. He is currently unemployed.

48. This entire experience has caused Dalmau significant mental and emotional distress and financial hardship.

## COUNT ONE: VIOLATION OF TITLE VII

49. By denying his request for a religious exemption to the mandatory COVID-19 vaccination policy and terminating his employment, Defendant violated Dalmau's rights under Title VII.

50. Title VII provides, *inter alia*, that "[i]t shall be an unlawful employment practice for an employer . . . to discharge any individual . . . because of such individual's . . . religion . . . ." 42 U.S.C. § 2000e-2(a)(1). Title VII further defines "religion" to include "all aspects of religious observance and practice, as well as belief, unless an employer demonstrates that he is unable to reasonably accommodate to an employee's or prospective employee's religious observance or practice without undue hardship on the conduct of the employer's business."

51. Accordingly, under Title VII it is unlawful "for an employer not to make reasonable accommodations, short of undue hardship, for the religious practices of his employees . . . ." *Trans World Airlines, Inc. v. Hardison*, 432 U.S. 63, 74 (1977); *see also Ansonia Bd. of Educ. v. Philbrook*, 479 U.S. 60, 68 (1986) ("The employer violates the statute unless it 'demonstrates that [it] is unable to reasonable

accommodate . . . an employee's . . . religious observance or practice without undue hardship on the conduct of the employer's business.'") (quoting 42 U.S.C. § 2000e(j)).

52. Defendant was recklessly indifferent to Dalmau's federally protected rights.

53. As a direct and proximate result of Defendant's discriminatory conduct, Dalmau has suffered pecuniary and non-pecuniary damages, including lost income and benefits and mental and emotional distress, for which he is entitled to an award of reinstatement, back pay, front pay, out of pocket costs, compensatory damages, and attorney's fees and costs.

## COUNT TWO:  VIOLATION OF STATE HUMAN RIGHTS LAW

54. By denying his request for a religious exemption to the mandatory COVID-19 vaccination policy and terminating his employment, Defendant violated Dalmau's rights under the New York State Human Rights Law.

55. The State Human Rights Law provides, *inter alia*, that "[i]t shall be an unlawful discriminatory practice . . . [f]or an employer . . . because of an individual's . . . creed . . . to discharge from employment such individual . . . ." N.Y. Exec. Law § 296(1)(a).  The State Human Rights Law further provides that "[i]t shall be an unlawful discriminatory practice for any employer . . . to impose upon a person as a condition of obtaining or retaining employment . . . any terms or conditions that would require such person to violate or forego a sincerely held practice of his or her religion . . . unless, after engaging in a bona fide effort, the employer demonstrates that it is unable to reasonably accommodate the employee's or prospective employee's sincerely held religious observance or practice without undue hardship on the conduct of the employer's business." *Id.* § 296(10)(a).

56. Defendant was recklessly indifferent to Dalmau's state law rights.

57. As a direct and proximate result of Defendant's discriminatory conduct, Dalmau has suffered pecuniary and non-pecuniary damages, including lost income and benefits and mental and emotional distress, for which he is entitled to an award of reinstatement, back pay, front pay, out of pocket costs, compensatory damages, and attorney's fees and costs.

**COUNT THREE: VIOLATION OF CITY HUMAN RIGHTS LAW**

58. By denying his request for a religious exemption to the mandatory COVID-19 vaccination policy and terminating his employment, Defendant violated Dalmau's rights under the New York City Human Rights Law.

59. The City Human Rights Law provides, *inter alia*, that "[i]t shall be an unlawful discriminatory practice . . . [f]or an employer . . . because of the actual or perceived . . . creed . . . of any person . . . to discharge from employment such person . . . ." N.Y.C. Admin. Code § 8-107(1). The City Human Rights Law further provides that "[i]t shall be an unlawful discriminatory practice for an employer . . . to impose upon a person as a condition of obtaining or retaining employment any terms or conditions, compliance with which would require such person to violate, or forego a practice of, such person's creed or religion . . . and the employer shall make reasonable accommodation to the religious needs of such person." *Id.* § 8-107(3).

60. Defendant was recklessly indifferent to Dalmau's city law rights.

61. As a direct and proximate result of Defendant's discriminatory conduct, Dalmau has suffered pecuniary and non-pecuniary damages, including lost income and benefits and mental and emotional distress, for which he is entitled to

12

an award of reinstatement, back pay, front pay, out of pocket costs, compensatory damages, and attorney's fees and costs.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38, Plaintiff hereby demands a trial by jury as to all issues triable by jury in the above-captioned civil action.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully prays that the Court enter judgment against Defendant on his claims under Title VII, the New York State Human Rights Law, and the New York City Human Rights Law, and award him the following:

- A. Reinstatement retroactive to February 22, 2022;
- B. Back pay in an amount to be determined at trial;
- C. Front pay in an amount to be determined at trial;
- D. Out of pocket costs in an amount to be determined at trial;
- E. Compensatory damages in an amount to be determined at trial;
- F. Pre-judgment and post-judgment interest;
- G. Attorney's fees and costs;
- H. Appropriate injunctive relief; and
- I. Such other relief as justice may require.

*For Plaintiff Gabriel F. Dalmau:*

/s/ *Steven M. Warshawsky*
_____

Steven M. Warshawsky
The Warshawsky Law Firm
118 North Bedford Road, Suite 100
Mount Kisco, NY  10549
Tel:  (914) 864-3353
Email: smw@warshawskylawfirm.com
Web:  www.warshawskylawfirm.com

Andrea Paparella
Law Office of Andrea Paparella, PLLC
(pandemic mailing address)
4 Dunlap Street
Salem, MA  01970
Tel:  (617) 680-2400
Fax:  (914) 462-3287
Email:  amp@andreapaparella.com
Web: www.andreapaparella.com

Dated:  October ___, 2022